U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

JUN 13 2007

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| **KELVIN STANLEY GEOGHAGAN** | **DOCKET NO: 06-CV-2331** |
| **VERSUS** | **JUDGE DRELL** |
| **WARDEN WILKINSON, ET AL.** | **MAGISTRATE JUDGE KIRK** |

## REPORT AND RECOMMENDATION

Pro se plaintiff is an inmate in the custody of the Louisiana Department of Public Safety and Corrections; he is incarcerated at Winn Correctional Center in Winnfield, Louisiana. Plaintiff filed this action under 42 U.S.C. §1983, in forma pauperis, against Warden Tim Wilkinson, Tim Keith, Virgil Lucas, Captain Coleman, Martha Booker, Lieutenant Knight, Officer Fitch, Officer Moss, "Inmate Shawn," and Corrections Corporation of America.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court.

## STATEMENT OF THE CASE

In his original complaint, Plaintiff complained that he was written up by Officer Moss, but he did not state the nature of the disciplinary charge. In the amended complaint, Plaintiff provides that he was written up by Officer Moss on November 4, 2005, for violating Rule 30.K (General Prohibited Behavior) by making a verbal allegation to Officer Moss that Officer Fitch was engaging in sexual acts in the "ice room." [Doc. #12, p.4] After a hearing, Plaintiff was found guilty of violating Rule 30.K. As a result, he was sentenced to forfeiture of ninety days good time and ten days isolation/disciplinary detention. [Doc. #12, p.8] According to Plaintiff, he also lost his job assignment. [Doc. #12, p.1]

Plaintiff confirms that there has been no reversal or correction made to his disciplinary conviction or sentence. Plaintiff claims that he spoke with Warden Keith about the sentence and Keith told Plaintiff he would "take care of it." Plaintiff claims that Keith told him that the State had reversed the disciplinary conviction and had restored Plaintiff's good time credits. Plaintiff wrote to the secretary asking for a copy of the decision that reversed the conviction, and she replied in writing that no decision had been received from the State. According to the documents submitted by Plaintiff, on March 30, 2006, the Secretary of the Department of Public Safety and Corrections actually *denied* Plaintiff's Disciplinary Board Appeal. [Doc. #12, p.8]

Next, Plaintiff alleges that he was attacked by two inmates in his dorm on December 17, 2005. He claims that the inmates attacked him for being a "rat" because he informed WCC officials that officers were "having sex with inmates." [Doc. #1-1, p.3] Plaintiff claims that his nose and the bones around his left eye were broken, causing him to suffer from "a recessed eye, blurred vision, blue flashes, white flashes, black dots, headaches, sinus problems, crushed nose," and other vision problems. [Doc. #1-1, p.3-4] Plaintiff alleges that he was not properly protected by WCC staff, and was therefore subjected to cruel and unusual punishment.

Finally, Plaintiff initially complained that he received inadequate medical treatment after he was assaulted by another inmate. Then, one month after filing suit, Plaintiff filed a document stating, "This week out of the blue someone decided to fix my nose at L.S.U." He had apparently been taken to the hospital for nose surgery. Then, approximately one month after that filing, Plaintiff submitted a document stating that, despite receiving some medical treatment, his nose is still "caved in" and his breathing is worse. He claims to have more "scar tissue, stretch marks, and sunken areas." Plaintiff also complains that the infirmary will only give out Motrin, Ibuprofen, and aspirin, but none

of those medications do any good.

## LAW AND ANALYSIS

I.  Due Process in Disciplinary Proceeding

Plaintiff claims that he was wrongfully charged and/or convicted of a disciplinary violation. The protections afforded by the Due Process Clause do not extend to "every change in the conditions of confinement" that adversely affects prisoners. Bridges v. Lee, 124 Fed. Appx. 225, 226 (5th Cir. 2005)(citing Madison v. Parker, 104 F.3d 765, 767 (5th Cir. 1997)). In Sandin v. Conner, 515 U.S. 472 (1995), the Supreme Court held that a prisoner's liberty interest is "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. (citations omitted).

As stated in the Memorandum Order [Doc. #8], the loss of good time credits as a result of prison disciplinary proceedings may implicate protected liberty concerns. See Sandin v. Conner, 515 U.S. 472, 484 (1995); Hudson v. Johnson, 242 F.3d 534, 536 (5th Cir. 2001); Murphy v. Collins, 26 F.3d 541, 543 & n.5 (5th Cir. 1994). However, under Heck v. Humphrey, even if a liberty interest has been implicated **an inmate may not attack a prison disciplinary conviction in a civil rights action until he demonstrates that the disciplinary charge has been invalidated, reversed, expunged, or otherwise declared invalid through a collateral proceeding or writ of habeas corpus.** Heck v. Humphrey, 512 U.S. 477, 486-87 (1994).[1] In the instant case, Secretary Richard

---

[1] The Supreme Court has extended Heck to prison disciplinary proceedings like the one in question here, concluding that claims for damages and declaratory relief that necessarily imply the invalidity of the punishment imposed in a disciplinary conviction are not cognizable in a 42

3

Stalder denied Plaintiff's disciplinary board appeal [Doc. #12, p.8], and Plaintiff specifically states in the amended complaint that his conviction has **not** been invalidated, reversed, expunged, or otherwise declared invalid through a collateral proceeding or writ of habeas corpus. Because Plaintiff's claims call into question the validity of his disciplinary conviction, he must satisfy the conditions of Heck v. Humphrey before he can proceed in a civil rights action for damages. See Montoya v. Jones, 118 Fed. Appx. 797, 799 (5th Cir. 2004). A claim that falls under the rule in Heck is legally frivolous unless the Heck conditions are met. Id.; Hamilton v. Lyons, 74 F.3d 99, 102 (5th Cir. 1996).

## II. Failure to Protect

Plaintiff alleges that he was attacked by two inmates in his dorm on December 17, 2005, because the defendants failed to provide him with protection. As stated in the Memorandum Order, not every injury suffered by one prisoner at the hands of another translates into constitutional liability for prison officials. See Farmer v. Brennan, 511 U.S. 825, 834 (1994). Rather, a prisoner must demonstrate both that (1) "he is incarcerated under conditions posing a substantial risk of serious harm" and (2) the defendant prison official's state of mind is one of "deliberate indifference" to the prisoner's safety. Id.; Horton v. Cockrell, 70 F.3d 397, 401 (5th Cir. 1995). A prison official is "deliberately indifferent if he "knows of an excessive risk to inmate health or safety" and disregards that risk. See Farmer, 511 U.S. at 837.

Plaintiff fails to allege specific facts to support his claims against the defendants; instead, he presents allegations based on speculation and assumption. Plaintiff was ordered to amend his

---

U.S.C. § 1983 proceeding. See Edwards v. Balisok, 520 U.S. 641, 646-48 (1997).

complaint and allege facts indicating that the defendants had the requisite knowledge of a substantial risk and deliberately disregarded that risk. In responding to the amend order, Plaintiff stated, "The best I can do is send you some copies to read. I was having nightmares... so bad I had to write mental health for help" before the attack. [Doc. #12, p.2] He also claims that he wrote to Warden Wilkinson and Chief Lucas. However, Plaintiff has not alleged that his letter to any prison official provided that official with "specific facts of any specific incident involving any specific inmate(s) relating to plaintiff's claims." See Brewer v. Sanders, 2001 U.S. Dist. LEXIS 2085 (ND Tex. 2001), 2001 WL 204800 (ND Tex. 2001). Despite having the opportunity to amend, filing two amended complaints and three "responses" to his amended complaints [Doc. #1,6,7,11,12,13], Plaintiff does not claim that his letters made the officials aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, nor has he alleged facts that would support a claim that the officials actually drew the inference that there was a substantial risk of serious harm.

Even after a liberal interpretation of Plaintiff's numerous pleadings, it is clear that, at best, he has alleged facts which may or may not support a claim of negligence. However, Section 1983 imposes liability for constitutionally protected rights, not for violations of tort duties of care. Id.; Griffith v. Johnston, 899 F.2d 1427, 1435 (5th Cir. 1990). Thus, to the extent Plaintiff alleges mere negligence against the defendants, his claim lacks an arguable basis in law and is frivolous.

III.    Medical Care

Plaintiff complains that he did not receive proper medical care for injuries sustained on December 17, 2005. To state a constitutional claim for the denial of proper medical treatment under §1983, a prisoner must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97 (1976). In Estelle v.

Gamble, the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." Id. at 104 (citation omitted). The Court cautioned that a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. Id. at 106.

According to documents submitted by Plaintiff, he was treated on December 17, 2005, for an inmate/inmate assault with possible fracture. Plaintiff was taken to LSU Medical Center for evaluation/treatment, and it was discovered that Plaintiff had a nasal fracture and left orbital floor fracture. Antibiotics, pain medication, and saline nose spray were ordered. On December 22, 2005, Plaintiff was taken back to LSU Medical; it was recommended that Plaintiff have two types of eye drops, which were both ordered by the doctor on December 23, 2005. On December 27, 2005, the doctor noted that Plaintiff was doing well, and his eye was less swollen. There were no complaints of decreased vision. Plaintiff was seen again on December 31 at which time he was furnished sunglasses to wear when outdoors, as his eyes were dilating from the eye drops. on February 26, 2006, Plaintiff was again evaluated; it was recommended that Plaintiff see an ear, nose, and throat doctor; but, on March 6, 2006, the request was denied. Plaintiff was treated on March 8, 2006 and April 17, 2006, and his condition was stable. Approximately one month after filing suit, Plaintiff wrote the court to inform it that WCC had finally taken him to the hospital to "fix" his nose.

6

Plaintiff underwent nose surgery, but complained to the court that despite having his nose "fixed," it is still "caved in" and his breathing is worse. He claims to have more "scar tissue, stretch marks, and sunken areas." Plaintiff also complains that the infirmary will only give out Motrin, Ibuprofen, and aspirin, but none of those medications do any good.

Even if Plaintiff is not satisfied with the results of his surgery or the treatment he received, his allegations do not reach the level of severity displayed in the examples of deliberate indifference offered in Estelle v. Gamble. See 429 U.S. at 104 n.10 (stating that deliberate indifference could be exhibited by, e.g., a "doctor's choosing the easier and less efficacious treatment of throwing away the prisoner's ear and stitching the stump" or the "injection of penicillin with knowledge that prisoner was allergic, and refusal of doctor to treat allergic reaction" (citations and internal quotation marks omitted)). A showing of "deliberate indifference" in a medical needs case requires the prisoner **to submit evidence that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."** Domino v. Texas Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001), *quoting* Estelle, 429 U.S. at 107 (emphasis added). Plaintiff has not alleged that Defendants refused to treat him, ignored his complaints, or intentionally treated him incorrectly. Plaintiff clearly disagrees with some of the treatment that he received, but he has not shown deliberate indifference to his medical needs.

For the forgoing reasons,

**IT IS RECOMMENDED** that Plaintiff's §1983 complaint be **DENIED AND DISMISSED** as frivolous and failure to state a claim for which relief can be granted under 28 U.S.C. §1915(e)(2)(b)(i) and (ii).

Under the provisions of 28 U.S.C. Section 636(b)(1)(c) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the District judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir. 1996).**

THUS DONE AND SIGNED in Chambers at Alexandria, Louisiana, this _____ day of _____, 2007.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE