U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - ALEXANDRIA

FEB 1 2 2009

ROBERT H. SHEMWELL, CLERK
BY _____
       DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| KELVIN STANLEY GEOGHAGAN<br>Plaintiff<br><br>VERSUS<br><br>TIM WILKINSON, et al.,<br>Defendants | CIVIL ACTION<br>SECTION "P"<br>NO. CV06-2331-A<br><br>JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE
===

Before the court is a civil rights complaint filed pursuant to 42 U.S.C. § 1983, in forma pauperis, by pro se plaintiff Kelvin Stanley Geoghagan ("Geoghagan") on December 13, 2006, and amended on February 12, 2007 (Doc. 6), March 21, 2007 (Doc. 7), May 23, 2007 (Doc. 12), and May 25, 2007 (Doc. 13). The named defendants are Tim Wilkinson ("Wilkinson") (warden of Winn Correctional Center ("WCC") in Winnfield, Louisiana), Tim Keith ("Keith") (assistant warden of WCC), Virgil Lucus ("Lucus") (chief of security at WCC), and Captain Coleman, Captain Martha Booker, Lieutenant Knight, Officer Fitch, and Officer Moss, all employed at WCC.

Geoghagan alleges that on December 17, 2005, he was attacked by two inmates who believed Geoghagan had reported that two corrections officers who were having sex with inmates. As a result Geoghagan suffered a broken nose and broken bones around his left eye, leaving him with a recessed eye, blurred vision, blue and white flashes, black dots, headaches, sinus problems, a crushed nose, and dents and horizontal lines. Pursuant to a judgment on October 30, 2007 (Doc. 16), the sole remaining claim is Geoghagan's contention that defendants failed to protect him from the other inmates. For relief, Geoghagan asks for monetary damages.

Defendants filed a motion for summary judgment in the above-captioned case (Doc. 49), to which Geoghagan filed an opposition (Doc. 54). Defendants' motion for summary judgment is now before the court for disposition. This matter was referred to the undersigned Magistrate Judge for Report and Recommendation pursuant to a standing order of this court.

The Law of Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates that a summary judgment:

> "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, [submitted concerning the motion for summary judgment], if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

2

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material". A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to

establish the existence of a genuine issue of material fact for trial. In this analysis, we review the facts and draw all inferences most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1959). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment. Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82 (1992).

## Law and Analysis

### Exhaustion

Geoghagan claims defendants failed to protect him from an attack by two other inmates. Defendants contend in a motion for summary judgment that Geoghagan's claim should be dismissed because he failed to file an ARP on the matter, and submitted Geoghagan's ARPs (Doc. 53). Defendants admit in their statement of undisputed facts that Geoghagan filed a grievance, but failed to file it with the prison disciplinary board so the grievance was not considered. Defendants further admit that Geoghagan subsequently filed additional grievances with respect to the December 16, 2005, attack, but they were rejected as untimely.

Section 1997e(a), as amended by the Prison Litigation Reform Act (PLRA), provides that "[n]o action shall be brought with respect to prison conditions under Section 1983...by a prisoner confined in any jail, prison, or other correctional facility until

4

such administrative remedies as are available are exhausted." See Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 992 (2002); Booth v. Churner, 532 U.S. 731, 741 n. 6, 121 S.Ct. 1819 (2001). Also, Jones v. Bock, 549 U.S. 199, 211, 237 S.Ct. 910, 918-919 (2007); Days v. Johnson, 322 F.3d 863 (5th Cir. 2003); Clifford v. Gibbs, 298 F.3d 328, 330-331 (5th Cir. 2002); Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001). Resort to a prison grievance process must precede resort to a court. Porter, 534 U.S. at 529, 122 S.Ct. at 990. Compliance with prison grievance procedures is all that is required by the PLRA to properly exhaust. Jones, 549 U.S. at 218, 127 S.Ct. at 922-923.

However, the exhaustion requirement imposed by amended § 1997e is not jurisdictional. Wendell v. Asher, 162 F.3d 887, 890 (5th Cir. 1998). Also, Woodford v. Ngo, 548 U.S. 81, 101, 126 S.Ct. 2378, 2392 (2006)("the PLRA exhaustion requirement is not jurisdiction,...thus allowing a district court to dismiss plainly meritless claims without first addressing...whether the prisoner did in fact properly exhaust available administrative remedies"). Available administrative remedies are exhausted in compliance with the PLRA when the time limits for the prison's response set forth in the prison grievance procedures have expired. Gates v. Cook, 376 F.3d 323, 332 (5th Cir. 2004), citing Underwood v. Wilson, 151 F.3d 292, 295 (5th Cir. 1998). Also, Mahogany v. Miller, 252 Fed.Appx. 593, 594 (5th Cir. 2007)("the district court assumes that

5

a prisoner's claims have been exhausted when his grievances were not processed within prescribed time limits"). Failure to exhaust is an affirmative defense under the PLRA, and inmates are not required to specially plead or demonstrate exhaustion in their complaints. Jones, 549 U.S. at 216, 127 S.Ct. at 921. However, a court can dismiss a case prior to service on defendants for failure to state a claim, predicated on failure to exhaust, if the complaint itself makes clear that the prisoner failed to exhaust. Carbe v. Lappin, 492 F.3d 325, 328 (5th Cir. 2007). Also, Torns v. Miss. Dept. of Corrections, 2008 WL 5155229, *2 (5th Cir. 2008). A court presented with a mixed complaint of both exhausted and unexhausted claims should allow the plaintiff to delete the unexhausted claims and proceed with the exhausted claims. Jones, 549 U.S. at 221-222, 127 S.Ct. at 924-925.

A district court must afford a prisoner an opportunity to show that he has either exhausted the available administrative remedies or that he should be excused from this requirement. The Fifth Circuit has recognized, as a basis for excuse, circumstances where administrative remedies are inadequate because prison officials have ignored or interfered with a prisoner's pursuit of an administrative remedy, or where dismissal would be inefficient and would not further the interests of justice or the purposes of the exhaustion requirement. Johnson v. Ford, 261 Fed.Appx. 752, 755 (5th Cir. 2008), and cases cited therein.

On January 10, 2006, Geoghagan properly and timely filed a grievance pertaining to Officer Fitch calling him a snitch, his need for protection due to being labeled a snitch, and the December 17, 2005, attack by the inmates (Doc. 49, p. 36). Geoghagan's ARP was "rejected" because "[t]his matter is to be argued to the disciplinary board and if not satisfied, appealed to the warden" (Doc. 49, p. 38). Although Geoghagan tried to file another grievance with the same claims in April 2006, it was rejected as untimely (Doc. 49, pp. 39-40).

Since defendants decided to address Geoghagan's timely filed grievance in his disciplinary proceeding, rather than through the proper administrative remedy procedures, defendants are estopped from claiming that Geoghagan failed to exhaustive administrative remedies. Geoghagan's claim is considered exhausted.[1]

---

[1] LA ADC 22:I.325(G)(1) and (2) state:

1. First Step (Time Limit 40 days)

a. The inmate commences the process by writing a letter to the warden, in which he briefly sets out the basis for his claim, and the relief sought (refer to Subsection F, "Procedure-Initiation of Process" for the requirements of the letter). The inmate should make a copy of his letter of complaint and retain it for his own records. The original letter will become a part of the process, and will not be returned to the inmate. The institution is not responsible for furnishing the inmate with copies of his letter of complaint. This letter should be written to the warden within 90 days of an alleged event. (This requirement may be waived when circumstances warrant. The warden, or his designee, will use reasonable judgment in such matters.) The requests shall be screened by the ARP screening officer and a notice will be sent to the

Since Geoghagan has exhausted his available administrative remedies, defendants' motion for summary judgment due to lack of exhaustion should be denied.

Failure to Protect

Geoghagan contends defendants failed to protect him from the attack by other inmates, resulting in severe and permanent injuries to his face.

The Eighth Amendment imposes duties on prison officials to provide humane conditions of confinement; prison officials must

---

inmate advising that his request is being processed or is being rejected. The warden may assign another staff person to conduct further fact-finding and/or information gathering prior to rendering his response. The warden shall respond to the inmate within 40 days from the date the request is received at the first step.

b. For inmates wishing to continue to the second step, sufficient space will be allowed on the response to give a reason for requesting review at the next level. There is no need to rewrite the original letter of request as it will be available to all reviewers at each step of the process.

2. Second Step (Time Limit 45 days)

a. An inmate who is dissatisfied with the first step response may appeal to the secretary of the Department of Public Safety and Corrections by so indicating that he is not satisfied in the appropriate space on the response form and forwarding it to the ARP screening officer within 5 days of receipt of the decision. A final decision will be made by the secretary and the inmate will be notified within 45 days of receipt. A copy of the secretary's decision will be sent to the warden.

b. If an inmate is not satisfied with the second step response, he may file suit in district court. The inmate must furnish the administrative remedy procedure number on the court forms.

ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of inmates. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1977 (1994). In particular, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. Being violently assaulted in prison is simply not a part of the penalty that criminal offenders pay for their offenses against society. Farmer, 114 S.Ct. at 1976-77.

For an inmate to succeed on a claim based on a failure to prevent harm, he must show that (1) he was incarcerated under conditions posing a substantial risk of serious harm, and (2) the prison official was "deliberately indifferent" to his health or safety. Failing to act with deliberate indifference to a substantial risk of harm is the equivalent of recklessly disregarding that risk. Farmer, 114 S.Ct. at 1978. Deliberate indifference is a subjective test and it must be shown that the official actually knew of the risk of harm to the inmate. It is insufficient to show solely that the official should have known of the risk. The official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference. Farmer, 114 S.Ct. at 1979.

Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in

the usual ways, including inference from circumstantial evidence. A fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. It remains open to an official to prove that he was unaware even of an obvious risk to inmate health and safety. Farmer, 114 S.Ct. at 1981-82. However, a prison official who actually knew of a substantial risk to inmate health and safety may be found free from liability if he responded reasonably to the risk, even if the harm ultimately was not averted. Farmer, 114 S.Ct. at 1982-83.

The failure of a prisoner to give any advance notice to prison officials of potential danger to the prisoner's safety is not dispositive of the issue of the official's awareness, nor is advance notice of a substantial risk of assault posed by a particular fellow prisoner a prerequisite. Farmer, 114 S.Ct. at 1984-1985.

In the case at bar, Geoghagan alleges in his complaint that he has had problems with Officer Fitch since 2002. Geoghagan contends that, in 2005, Officer Fitch yelled at Geoghagan, so he wrote her up for harassment (Doc. 54). About six weeks later, Geoghagan contends Officer Fitch and Harrison "put C/O Bradford up" to saying he had asked Officer Bradford for sex in the tool room; Geoghagan was written up (Doc. 54). Geoghagan contends that, around that time, he saw Officer Harrison having sex with an inmate. Then, in November 2006, Geoghagan reported to Officer Moss that Officer

Fitch was having sex with inmates and he intended to write her up for it. In response to that allegation, Moss wrote up Geoghagan for "spreading rumors." However, Geoghagan proceeded to write a complaint against Fitch, which he left it with Martha Booker. Geoghagan alleges that Fitch found out he had written her up and sought him out to loudly cuss at him and complain about the write-up. Geoghagan alleges that Fitch's public rant about Geoghagan being a snitch was overheard by other inmates and officers. As a consequence, Geoghagan contends he was attacked in his dorm by inmate Marvin Vance on December 17, 2005, while a second inmate, Shawn, attacked Geoghagan from behind with a piece of metal, breaking his nose and the bones around his left eye. Geoghagan contends there were no officers around during the attack because the corrections officer on duty (Geoghagan refers to him as "Beouffs") was in the key, talking to the maintenance man. Geoghagan further contends the lights were off.

Labeling an inmate a snitch violates a guard's duty to protect the inmate. Irving v. Dormire, 519 F.3d 441, 451 (8th Cir. 2008); Benefield v. McDowall, 241 F.3d 1267, 1271-1272 (10th Cir. 1001); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-1139 (9th Cir. 1989); Harmon v. Berry, 728 F.2d 1407, 1409 (11th Cir. 1984). Also, Smith v. Rabalais, 659 F.2d 539 n.19 (5th Cir. 1981), cert. den., 455 U.S. 992, 102 S.Ct. 1619 (1982) (recognizing the danger involved when a prison informer's identity is revealed). When officials are aware

11

of a danger to an inmate's health and safety, such as when an inmate becomes a snitch, it violates the constitutional prohibition against cruel and unusual punishment to fail to afford that inmate reasonable protection. Gullatte v. Potts, 654 F.2d 1007, 1012 (5th Cir. 1981). The Eighth Circuit has held that a reasonable prison guard would have known that to label an inmate a snitch would violate his constitutional right to protection from harm. Irving, 519 F.2d at 452. Also, David v. Hill, 401 F.Supp.2d 749, 757 (S.D.Tex. 2005). A prison official acts with deliberate indifference if he helps create a risk to an inmate's health or safety, such as when a prison official disseminates information that an inmate is a snitch. Adames v. Perez, 331 F.3d 508, 514 (5th Cir. 2003).

In Adames, 331 F.3d at 514, the Fifth Circuit stated that in order to show there was a substantial risk to his safety, an inmate-plaintiff must show other inmates knew or believed the plaintiff was a snitch. To show deliberate indifference on the part of a prison official, the plaintiff must show the prison official was aware of facts that could lead him to infer other inmates knew or believed the plaintiff was a snitch. Adames, 331 F.3d at 514. The plaintiff must also show the prison official failed to respond reasonably to the threat to the plaintiff's safety. No liability exists if an official reasonably responded to a known substantial risk, even if the harm was ultimately not

12

averted. <u>Longoria v. Texas</u>, 473 F.3d 586, 594 (5th Cir. 2006).

Thus, to show there was a substantial risk of serious harm to Geoghagan, he contends Fitch loudly cussed at him and informed the other inmates that Geoghagan had filed a complaint against her for having sex with the inmates. Geoghagan further shows defendants were aware of the substantial risk to his safety because they heard Fitch tell the other inmates Geoghagan was a snitch, but failed to take any steps to separate or protect Geoghagan from the other inmates.

Defendants contend in their motion for summary judgment that Geoghagan has not made any factual allegations linking the defendants with his claim that they failed to protect him from the attack by the other inmates. Defendants further argue they had no warning or reason to know Geoghagan would be attacked by other inmates and were unaware he needed to be protected. However, Geoghagan has alleged that Fitch labeled him a snitch to the other inmates, and that the other defendant officers either heard her doing so or were aware she had done so, and thus knew there was a substantial risk to his safety from other inmates. Geoghagan further alleges the defendants did not take any steps to protect him from the attack by other inmates after he was labeled a snitch, and that he was severely injured in the attack. Defendants have not addressed Geoghagan's allegation that they were aware Fitch had labeled him a snitch.

13

Therefore, there are genuine issues of material fact which preclude a summary judgment on the issues of whether defendants knew Geoghagan had been labeled a snitch by Fitch and whether they failed to respond reasonably to protect him from the attack by other inmates. Defendants' motion for summary judgment should be denied.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that defendants' motion for summary judgment (Doc. 49) be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND**

**LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this __11th__ day of February, 2009.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE